BORLAND v. PRINDLE, WEEDEN & CO.

(Circuit Court, D. Rhode Island. March 28, 1906.)

No. 2,762.

1. CONTRACTS—LEGALITY—AGREEMENT BY STOCKHOLDERS TO TRANSFER MANAGEMENT OF CORPORATE BUSINESS.

A contract by which defendants agreed to purchase all of the stock of a private corporation and pay for the same at the end of 15 months, and which gave them the right in the meantime to conduct the business and manage and control all of the property and plants of the corporation, is not void, as against public policy, there being no minority stockholders nor third parties injuriously affected thereby.

[Ed. Note.—For cases in point, see vol. 11, Cent. Dig. Corporations, § 504.]

2. SAME—AGREEMENT TO PROCURE CORPORATE ACTION.

An agreement by a partnership to cause or procure a corporation to purchase certain properties, and to issue its bonds and stock in payment

therefor is not void, as against public policy, where it does not appear that the rights of third persons would be injuriously affected, or that other than legal means were contemplated to bring about such corporate action.

3. SAME—ACTION FOR BREACH—DEFENSES.

A party to a contract cannot escape liability for its breach by asserting the illegality of an alternative provision inserted therein for his own benefit, and which might be disregarded and leave the contract complete.

4. PLEADING—SUFFICIENCY OF PLEAS.

Pleas considered on demurrer, and held insufficient, not only as containing argumentative denials of allegations in the declaration, but also because the affirmative matters pleaded therein constituted no substantial grounds of defense.

At Law. On demurrer of defendant Banigan to plaintiff's declaration, and plaintiff's demurrer to defendant Banigan's second, third, and fourth pleas.

J. Jerome Hahn and Homer Albers, for plaintiff.

John W. Hogan and Philip S. Knauer, for defendants.

BROWN, District Judge. In considering the contention that the contract is contrary to public policy and void, it is necessary to consider only the agreements relating to the North River Lumber Company, a Maine corporation, and to the North American Paper & Lumber Company, Limited, a Nova Scotia corporation.

1. As to the Maine corporation: The defendants agreed to purchase all the shares of its capital stock; and the certificates of stock, save three, were to be deposited in escrow for 15 months, until full payment should be made. The defendants, however, were to take "possession of the management," elect officers and directors, and operate the property in the usual course of business for 15 months. The defendants agreed, at the end of this period, to convey, or cause to be conveyed, the real estate, equipments, plant, assets and business as a going concern of the Maine corporation, to the Nova Scotia corporation. By the purchase of all its shares of stock, the defendants were to acquire the entire beneficial interest in the assets of the Maine corporation. Though payment for the shares of stock was to be deferred for 15 months, the agreement that the defendants might at once proceed to operate the property was between parties representing all the shares of stock and all the beneficial interest in the assets of the corporation. No authority has been presented having the slightest tendency to show that an arrangement of this character is against public policy. The plaintiff, representing the owners and vendors of the shares, and 'the defendants, as the purchasers of the shares, were in no fiduciary or trust relation to others. The Maine corporation apparently was a private corporation, and the rights of no third persons, so far as appears, were to be injuriously affected. This case should not be confused by authorities which relate to agreements prejudicial to minority stockholders.

2. As to the Nova Scotia corporation. It is objected that the agreement purports to empower the plaintiff to sell the charter of the North American company, a corporation, and delegate to the defendant copartnership the corporate powers conferred upon said company, and that this is against the policy of the law, and void.

While the expressions "to sell" and "to buy," used in connection with the charter of the North American company, may be loose, it is evident, upon a reading of the entire agreement, that what was contemplated was not in a strict legal sense a sale of the charter, but that the papers pertaining to the charter and the resignations of the then directors were to be delivered to the defendants so that they and their associates might proceed to organize the company. The intent was to substitute a new set of directors, and so far as destroying independent corporate activity is concerned, it is clear that it was intended that the Nova Scotia company should be set on foot as an active corporation which was ultimately to operate not only properties which it should acquire from the Maine corporation but other properties as well.

The defendants further agreed to cause the Nova Scotia company to issue 5 per cent. gold bonds to such amount as they should deem proper, secured by a mortgage constituting a first lien on its properties. Of such bonds, the defendants agreed to deliver $1,400,000 par value to the plaintiff within 15 months, but with the right in said defendants, if they preferred, to deliver in lieu thereof an equal amount at par of collateral trust 5 per cent. gold bonds issued by a corporation to be organized under the laws of New Jersey or other state, provided that such corporation should own all the bonds and stock of the North American company, and that the same should stand pledged, with no prior lien thereon, as security for payment of said collateral trust bonds. The defendants also agreed to pay to the plaintiff $1,150,000 in common stock of the Nova Scotia company, or its equivalent in shares of such other company organized as provided in said agreement.

It is to be observed that the defendants did not, in terms, agree for and on behalf of the corporation. The agreement was to procure corporate action of the Nova Scotia company. Nothing in the agreement shows that the rights of third persons were to be prejudiced, or that third persons were in any way interested in the Nova Scotia corporation. It was possible to bring about, through legal means, corporate action accepting conveyances of various properties which it was contemplated that the Nova Scotia corporation should acquire, and authorizing the issue of gold bonds and stock in payment therefor.

Objection is made to the provision allowing the defendants to pay the plaintiff in bonds of a corporation to be organized under the laws of New Jersey or other state. The defendants cannot escape responsibility, however, for breach of contract, by asserting the illegality of this clause inserted for their own benefit. If such ownership by a corporation of New Jersey or other state could not be legally effected, the alternative provision for payment in bonds other than those of the Nova Scotia corporation might be disregarded. The proviso that such corporation should own all the bonds and stocks of the North American company implies a legal ownership. If this cannot be accomplished, the alternative provision concerning payment is nullified by its own terms. So far as appears from the declaration, however, such an agreement is not void as against public policy, and I am of the opinion that no authority cited sustains the defendant's contention.

Looking at the whole contract, it is very clear that there was no

intent that the Maine corporation should be consolidated with or subordinated to the Nova Scotia corporation. The Maine corporation was to continue as an independent corporation until its property should be sold. Thereafter the Nova Scotia corporation was to carry on its own business independently. While it is said that it was the intent to destroy "the functional activities of two corporations," it is apparent that this somewhat vague criticism is not founded upon a proper interpretation of the contract, and, so far as appears from the declaration, it is not true in fact.

"There is no principle of public policy which forbids competent parties from entering into an agreement to form a corporation, and providing for its future management and control, if the corporation is created according to statutory requirements, and the objects contemplated are lawful and proper." Alger on the Law of Promoters and the Promotion of Corporations, § 247.

3. Passing to the plaintiff's demurrers to the defendant's pleas. The second plea sets forth that the plaintiff entered into an agreement with Edward M. Prindle of New York on December 8, 1902, states the agreement in full, and alleges that said agreement is the agreement of Edward M. Prindle, and not an agreement, writing, and undertaking, of John J. Banigan, together with Imboden, Weeden, and Prindle, doing business as copartners. This is merely an argumentative denial of the allegation of the declaration that the defendant Banigan entered into the agreement set forth in the declaration. The defendant seeks to support this plea by Court and Practice Act, § 287, passed by the General Assembly of Rhode Island at its January session, 1905. This does not, in my opinion, authorize an argumentative denial of this character, and does not justify unnecessary prolixity. The demurrer to the second plea is, in my opinion, well taken. The only effect of pleading this agreement is to show that it does not contain Banigan's signature; but it does not follow, as a matter of law, that the agreement was not made with the defendants through their agent. I see no useful purpose in incumbering the record with the second plea.

The third plea is substantially the same as the second, with this addition: It sets up chapter 47, § 53, of the Revised Statutes of Maine of 1903, and also a provision of the Constitution of the state of Maine, with the averment that the North River company was a corporation organized under the laws of Maine, and was subject to said constitutional provision, and that the agreement is in violation of said statute and of said constitutional provision, and contrary to public policy.

This plea is bad in that it both denies argumentatively the making of the agreement, and also sets up the legal invalidity of the agreement. But, aside from any irregularity in form of this plea, I fail to see that the statute of the state of Maine has any application to an agreement of the character set forth in the declaration. The statute is as follows:

"It shall be unlawful for any firm or incorporated company, or any number of firms or incorporated companies, or any unincorporated company, or association of persons or stockholders, organized for the purpose of manufacturing, producing, refining or mining any article or product, which enters into general use and consumption by the people, to form or organize any trust, or

to enter into any combination of firms, incorporated or unincorporated companies, or association of stockholders, or to delegate to any one or more board or boards of trustees or directors the power to conduct and direct the business of the whole number of firms, corporations, companies or associations which may have formed. or which may propose to form a trust, combination or association inconsistent with the provisions of this section and contrary to public policy."

The contract does not provide for any trust or combination. The Maine corporation was to run as an independent corporation, controlled by its own officers, until its properties should be disposed of to the North American company. The constitutional provision affords no additional ground for holding that said agreement is contrary to public policy.

The fourth plea sets up the same argumentative denial and, in addition, chapter 47, § 19 of the Revised Statutes of Maine of 1903. The point made upon this statute is that it provides that corporations shall have directors, that there shall be not less than three directors, and that the directors must be and remain stockholders. It is apparent, however, that there is no merit in the contention that because all the shares of stock of the corporation were to be sold, there could not be three directors who were stockholders. The agreement expressly provides that only 597 shares of the entire 600 shall be held in escrow, and that the remainder shall be outstanding. This is apparently for the purpose of complying with the statutory requirement.

Aside from the irregularity in form of the second, third, and fourth pleas, it is clear that said pleas, so far as they relate to the validity of the agreement set forth in the plaintiff's declaration, afford no substantial grounds additional to those argued on the demurrer to the declaration, for holding the agreement unlawful as against public policy.

Demurrer of defendant Banigan to plaintiff's declaration overruled.

Plaintiff's demurrers to defendant Banigan's second, third, and fourth pleas sustained.